**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| YASEEN AYMEN SALIH,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CLINTON COUNTY CORRECTIONAL FACILITY,<br><br>Respondent. | No. 4:26-CV-01512<br><br>(Chief Judge Brann) |

## MEMORANDUM OPINION

**OCTOBER 23, 2026**

Petitioner Yaseen Aymen Salih is an immigration detainee in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE). He is currently detained at Clinton County Correctional Facility in McElhattan, Pennsylvania. Salih commenced this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241, his second such petition in this Court.

Salih's second Section 2241 petition was initially reviewed through the lens of detention under 8 U.S.C. § 1226(c) due to the stay of removal issued by the United States Court of Appeals for the Third Circuit. Upon reconsideration, the parties and the Court agree that Salih is being detained under 8 U.S.C. § 1231, not § 1226. For the following reasons, the Court will grant in part Salih's Section 2241 petition and order his release on conditions.

## I. BACKGROUND

Salih is a native and citizen of Sudan who lawfully entered the United States in April 2000.[1] In 2013, he adjusted his status to Lawful Permanent Resident.[2]

In June 2019, Salih was convicted in federal court of attempt and conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and was sentenced to a term of 18 months' imprisonment.[3] Following that conviction, Salih was placed into removal proceedings for having committed an aggravated felony.[4] In August 2020, an immigration judge (IJ) ordered Salih removed to Sudan, but deferred his removal to Sudan under the Convention Against Torture (CAT).[5] Neither party appealed that decision, making it administratively final on September 23, 2020.[6]

The record does not reflect when Salih was released from federal custody for his criminal conviction or attendant immigration proceedings. In any event, in August 2021, he was arrested on new federal charges.[7] On May 1, 2023, he was sentenced to a 50-month aggregate term of imprisonment after pleading guilty to conspiracy to commit bank fraud, 18 U.S.C. § 1349, and aggravated identity theft, 18 U.S.C. § 1028A and Section 2.[8]

---

1 Doc. 17-2 at 2.

2 *Id.*

3 *See* Doc. 17-5 at 2-3; *United States v. Salih*, No. 2:18-cr-698-WJM-1, Doc. 48 (D.N.J. June 6, 2019).

4 *See* Doc. 17-4 (Notice to Appear).

5 *See* Doc. 17-5 at 3.

6 *See* Doc. 17-3 ¶ 5.

7 *See United States v. Salih*, No. 2:22-cr-270-KM, Doc. 4 (D.N.J. Aug. 26, 2021).

8 Doc. 17-7 at 2-3; *United States v. Salih*, No. 2:22-cr-270-KM, Doc. 58 (D.N.J. May 1, 2023).

On November 29, 2025, following completion of his criminal sentence, ICE took Salih into custody to effectuate his removal to a third country.[9] On or about January 7, 2026, Headquarters Removal and International Operations (HQ-RIO) informed Enforcement and Removal Operations (ERO) that Salih would be removed when a third country was located.[10] In February 2026, Salih was provided with forms for third-country removal to Ghana and Guinea.[11] Although Salih expressed fear of removal to both countries, ICE asserts that he eventually informed ERO that he would willingly go to Ghana.[12]

Salih lodged his first habeas corpus petition under 28 U.S.C. § 2241 in this Court on December 15, 2025.[13] In that petition, Salih sought injunctive relief, asking the Court to restrain the United States from removing him to Sudan or any third country without adequate notice of removal.[14] The Court ultimately held that it lacked jurisdiction to consider Salih's petition, as his claims were inextricably intertwined with the underlying removal proceedings and thus the district court was statutorily barred from entertaining his claims.[15]

---

[9] Doc. 17-2 at 3. It is unclear whether Salih was taken into custody by ICE on November 28 or November 29, 2025. The record provides conflicting dates. *Compare* Doc. 17-3 ¶ 6 (November 28), *with* Doc. 17-2 at 3 (November 29). This discrepancy is immaterial for resolution of this case.

[10] Doc. 17-3 ¶ 6.

[11] *Id.* ¶ 7.

[12] *Id.* ¶ 9.

[13] *See Salih v. Hoover*, No. 4:25-CV-02407, Doc. 1 (M.D. Pa. Dec. 15, 2025) (Brann, C.J.).

[14] *See id.*, Doc. 10 at 4.

[15] *See id.*, Doc. 10 at 4-6.

Salih lodged the instant Section 2241 petition in this Court on June 3, 2026, seeking immediate release or an individualized bond hearing, as well as numerous other forms of injunctive relief.[16] Respondent timely responded to the petition on July 28, 2026,[17] but then moved to withdraw their response due to a change in the procedural posture of Salih's removal proceedings.[18] That is, on July 29, 2026, the United States Court of Appeals for the Third Circuit granted Salih a stay of removal following his filing of a petition for review (PFR).[19] The Third Circuit also granted Salih a stay of proceedings pending the resolution of several cases on appeal with the Third Circuit and the United States Supreme Court.[20]

The Court granted Respondent's motion, giving Respondent 14 days to file an amended answer to Salih's Section 2241 petition.[21] Respondent timely filed that amended response on August 12, 2026.[22] Salih filed a traverse on August 18, 2026.[23] The Court, relying on the advocacy of the government and the stay of removal entered by the Third Circuit, construed Salih's detention as mandatory detention under 8 U.S.C. § 1226(c) and ordered that he be given a bond hearing before an immigration judge.[24]

---

16 *See generally* Doc. 1.
17 Doc. 12.
18 *See* Docs. 13, 14.
19 *See Salih v. U.S. Att'y Gen.*, No. 26-2451, Doc. 16 (3d Cir. July 29, 2026).
20 *Id.*
21 *See* Doc. 16.
22 *See generally* Doc. 17.
23 Doc. 18.
24 *See generally* Docs. 19, 20.

Salih promptly moved for reconsideration, primarily arguing that the Third Circuit's stay of removal related only to his removal to a third country and did not affect the finality or validity of the underlying final order of removal entered in his immigration proceedings.[25] The government admits error and now agrees that Salih is being detained pursuant to 8 U.S.C. § 1231, not 8 U.S.C. § 1226.[26] Nevertheless, Respondent asserts that the appropriate relief is a bond hearing, which Salih received on October 2, 2026, and therefore Salih's motion for reconsideration should be denied.[27]

In view of the change in the government's position and the need to correct clear error of law,[28] the Court will grant Salih's motion for reconsideration and will review his habeas petition under the appropriate statutory framework.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2241(c), a prisoner or detainee may receive habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States."[29] Because Salih filed the instant petition while he was detained within the jurisdiction of this Court, is still currently detained by ICE, and asserts

---

25 *See* Docs. 21, 22.
26 *See* Doc. 31 at 3-4 (citing, *inter alia*, *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)).
27 *Id.* at 5.
28 *See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted).
29 *See* 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

that his continued detention violates due process, this Court has jurisdiction over his Section 2241 petition.[30]

## III. Discussion

Salih has been ordered removed but has been granted deferral of removal to Sudan under the CAT. The government seeks to remove Salih to a third country. In June 2026, Salih filed a petition for review with the Third Circuit and was granted a stay of removal the following month. Salih argues that his removal is not reasonably foreseeable and thus his continued detention is unconstitutional. He seeks, among other relief, immediate release on conditions.

Respondent does not substantively respond to Salih's due process claim in their response to his motion for reconsideration. However, earlier in this case (before the Third Circuit had issued its stay of removal and when Respondent's position was that Salih was detained under Section 1231), Respondent argued that Salih could not show good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future.[31] Respondent further argued that, even if Salih could establish good cause, they had "proffered sufficient facts in rebuttal."[32]

---

[30] *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Khalil v. President, United States*, 164 F.4th 259, 277-79 (3d Cir. 2026) (holding that detention specific claims, like length and conditions of confinement, do not "arise from" removal proceedings and can be addressed by district courts).

[31] *See* Doc. 12 at 2.

[32] *See id.*

Section 1231(a) of Title 8 of the United States Code "governs the detention, release, and removal of individuals 'ordered removed.'"[33] Section 1231(a)(1)(A) provides that, following entry of a final order of removal, the United States generally must effectuate the noncitizen's removal during a 90-day "removal period."[34] That 90-day period generally begins to run, for noncitizens who are detained or confined for criminal offenses, on "the date the alien is released from [non-immigration] detention or confinement."[35] Detention is mandatory during this first 90 days.[36]

Following expiration of the 90-day removal period, certain noncitizens "may" be detained if they fall into one of four distinct categories: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [determined] 'to be a risk to the community'; and (4) those [determined] to be 'unlikely to comply with the order of removal.'"[37] How long a noncitizen may be detained pursuant to Section 1231(a)(6) following the 90-day removal period has been the subject of considerable litigation.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that Section 1231(a)(6) "does not permit indefinite detention," but rather "limits an

---

33 *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022).
34 8 U.S.C. § 1231(a)(1)(A).
35 *Id.* § 1231(a)(1)(B)(iii).
36 *Id.* § 1231(a)(2) ("During the removal period, the Attorney General *shall* detain the alien." (emphasis added)).
37 *Arteaga-Martinez*, 596 U.S. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)).

alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States."[38] Of course, the phrase "a period reasonably necessary to bring about that alien's removal" provides no easily ascertainable guidelines.[39] According to *Zadvydas*, a period reasonably necessary to bring about a noncitizen's removal from the United States is presumptively six months.[40]

Thus, noncitizens detained under Section 1231(a)(6) past the six-month presumptively constitutional period may bring an as-applied Due Process Clause challenge to their continued detention should that detention become prolonged and potentially unlawful.[41] Specifically, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either rebut that showing or release the

---

38 *Zadvydas*, 533 U.S. at 689.

39 *See Arteaga-Martinez*, 596 U.S. at 586 (Thomas, J., concurring in part); *see also Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 223-24 (3d Cir. 2018), *abrogated on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022). In *Johnson v. Arteaga-Martinez*, the Supreme Court abrogated the Third Circuit's holding in *Guerrero Sanchez* that Section 1231(a)(6) presumptively "requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *Arteaga-Martinez*, 596 U.S. at 576. The Court did not address the merits of the petitioner's individualized Due Process Clause challenge or hold that such a claim could not be pursued. *See id.* at 583-84. Moreover, the United States reassured the *Arteaga-Martinez* Court that "as-applied constitutional challenges" to prolonged detention under Section 1231(a)(6) "remain available." *Id.* at 583.

40 *See Zadvydas*, 533 U.S. at 701.

41 *See id.* at 699-701; *Guerrero-Sanchez*, 905 F.3d at 225; *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (citing *Zadvydas*, 533 U.S. at 689, 701).

[noncitizen]."[42] "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[43]

As noted above, Salih's order of removal became administratively final in September 2020, when the time to appeal expired. After serving his second criminal sentence, he was taken into custody by ICE on November 29, 2025. Salih, therefore, has been in post-removal detention under Section 1231(a)(6) for nearly eleven months, five months beyond the presumptively reasonable six-month period.

Salih argues that his removal is not reasonably foreseeable. He avers that (1) DHS has not taken any action, or shown any intention, to terminate CAT deferral of removal to Sudan; (2) DHS has not produced any travel documents, acceptance letters, itineraries, flight requests, or any other proof that Ghana or Guinea (or any other third country) will accept him[44]; (3) on March 27, 2026, Salih was informed via email that "third country removal flights take longer" because DHS must fill "an ENTIRE plane with removals to countries in the area" and therefore "people have to wait until HQ fills the entire plane"[45]; (4) in May 2026,

---

[42] *Guzman Chavez*, 594 U.S. at 529 (internal quotation marks omitted) (citing *Zadvydas*, 533 U.S. at 701); *see also* 8 C.F.R. §§ 241.4, 241.13 (establishing agency procedures for determining whether noncitizens detained under 1231(a) past 90-day removal period should be released on supervision or remain in detention).

[43] *Zadvydas*, 533 U.S. at 701.

[44] Doc. 1 at 2, 5.

[45] Doc. 1-8 at 1.

in response to a request for a removal update, Officer McArdle told Salih that he was "still trying to get ahold of the [Detention and Deportation Officer (DDO)] who handles [Salih's] country" and that he had sent several emails to the DDO "with no response"[46]; (5) on June 22, 2026, the United States filed a brief in the Third Circuit stating that DHS "has advised that Salih is detained but that there are currently no plans for his removal";[47] and (6) as noted above, the Third Circuit has entered a stay of removal in Salih's case, and there does not appear to be a clearly ascertainable end date to that stay.

In view of this substantial evidence and the length of delay in this case, the Court finds that Salih has carried his burden to show that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Therefore, the burden shifts to Respondent to rebut Salih's showing and demonstrate why removal is reasonably foreseeable.

Respondent has not carried their burden. Respondent asserts only that "fear interviews" have been conducted for Ghana and Guinea, Salih "remains on the [Third Country Removal (TCR)] list," and ICE is working to effectuate his removal to Ghana or Guinea.[48] None of this information provides individualized evidence regarding when—if ever—Salih may be removed to a third country. In

46 *Id.* at 4.
47 *See Salih v. U.S. Att'y Gen.*, No. 26-2451, Doc. 12 at 2 n.1 (3d Cir. June 22, 2026); Doc. 18-2 at 2 n.1.
48 *See* Doc. 12 at 9; Doc. 17-3 ¶¶ 7, 10.

fact, the affidavit upon which Respondent relies contains only the general assertion that "Petitioner is still on the TCR list."[49] While this may certainly be true, it does little to demonstrate that Salih's removal is reasonably foreseeable. The constitutional due process protections of the Fifth Amendment require more than such general and conclusory statements.[50]

In view of the foregoing, the Court will grant Salih's motion for reconsideration, grant his Section 2241 petition to the extent that he seeks release from detention, and order that he be released from custody with supervision. His release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances,"[51] so the Court will order Respondent to release him from custody within 48 hours with appropriate conditions of supervised release as provided by 8 U.S.C. § 1231(a)(3) and attendant regulations.

## IV. Conclusion

For the foregoing reasons, the Court will grant Salih's motion for reconsideration and will likewise grant his petition for a writ of habeas corpus

49 Doc. 17-3 ¶ 10.

50 *See Phan v. Warden of Fed. Correctional Institution Lewisburg*, No. 3:26-cv-00770, 2026 WL 1080390, at *6 (M.D. Pa. Apr. 21, 2026) (Mehalchick, J.) (collecting cases); *Nguyen v. Sage*, No. 3:26-cv-1661, 2026 WL 2087362, at *4 (M.D. Pa. July 20, 2026) ("The conclusory statements contained in Mr. Hans' declaration do not suffice to satisfy the Respondent's burden."); *Nguyen v. Sage*, No. 3:26-cv-1151, 2026 WL 1348513, at *7 (M.D. Pa. May 14, 2026) (Mariani, J.).

51 *Zadvydas*, 533 U.S. at 700.

pursuant to 28 U.S.C. § 2241 to the extent that Salih seeks release from detention on conditions. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge